v. Ryan Zinke, Secretary of the Interior, et al. Mr. Tarnas for appellants, cross-appellees, Cobell, et al. Ms. Reeves for amicus curiae, for appellant Creek, and Mr. Larson for appellate, cross-appellate Brown. May it please the Court, my name is Adam Tarnas and I represent the class plaintiffs in this appeal. We are here, as is deja vu all over again, we're here yet again with another Cobell appeal. But this one is about an ancillary matter, how to allocate some of the attorney's fees that were awarded to the plaintiffs, the plaintiffs' counsel, as part of the settlement. And I'd like to address three points. First, this Court lacks jurisdiction to review the attorney's fees order, as Brown's prejudgment interest motion was not a Rule 59e motion that told the time for the parties to appeal. So we would have jurisdiction, however, as to the question of the prejudgment interest, the interest on Brown's fees. That's correct. We're not disputing judgment over the prejudgment or jurisdiction over the prejudgment interest order. We think that order was improper and the Court should reverse it. And the third point is that we, if the Court does have jurisdiction over the attorney's fees order, we would submit that it should be reversed and that Brown should be denied some or all of his fees because of his clear and serious ethical violations. To start with the jurisdictional issue first, the two notices of appeal, both of which included the appeal from the attorney's fees order, were filed 98 and 112 days after the attorney's fees order. So we believe the appeals of that order were timely only if the prejudgment interest motion qualified as a Rule 59e motion that told the time to appeal. And, of course, what the label that's put on the motion is not relevant to determine whether in substance it was a 59e motion. And we think that the plain language of Rule 59e disposes of that question. 59e applies only to a motion, a judgment, and the attorney's fees order was not a judgment. The judgment in this case was entered on August 4th, 2011. And in the ordinary case, of course. But, Mr. Tarnas, it wasn't a judgment. It also wasn't final. It was an order of Magistrate Judge Harvey saying, okay, here's the amount of the basic fee, and if Mr. Brown wants to file a motion for prejudgment interest, I'll entertain that in two weeks. So what's final about that? He doesn't say this is a final judgment, appealable. He anticipates further action. And by your own claim, it's not a judgment. Well, normally an attorney's fees order is a final decision for purposes of 1291. All the Magistrate Judge here said was if you want to file a prejudgment interest motion, go ahead and do it. That's – a party has a right to do that in every case. So if the mere possibility of the prevailing party filing a prejudgment interest motion was enough to make it not final, then in every single case we would have to wait – the court would have to wait to see whether such a motion was in fact filed to determine its finality. But under Schaefer-Brewing, we look at the nature of the order, what the district judge seemed to contemplate, and here he seemed to contemplate that there was something more to do. Well, he said that if Brown wanted to file a motion, he could file it. And he did. And he did. Now, their argument was that for ab initio, as of January 31, 2017, the order wasn't final and nobody could appeal from that. And we think that's wrong simply because that's always – as I just said, it's always the possibility that someone could file a motion for prejudgment interest and that doesn't make it non-final until the motion is actually filed. And the reason when a prejudgment interest motion is normally filed is that the time to appeal stops is because of Rule 4 if it's a Rule 59e motion. Now, there's a different argument here, which they didn't make, and we think that they waived, and that may be what Your Honor is suggesting, is that upon the filing of the prejudgment interest motion, it destroys the finality that otherwise existed in the attorney's fees order. And as I said, I think they waived that argument. Well, if it's a judgment, then it's final, and then they can file 59e. And if it's not, it wasn't final, and they don't need to. I mean, it seems like a kind of excessive gotcha formality argument on your part, and I'm really not sure if there's any practical concerns that are driving it. I mean, you yourselves in responding, I think it was in responding to the motion for prejudgment interest that you said, you know, the court should just enter judgment as if the judgment hadn't already been entered. So nobody thought that the deal was done and that there was an appealable order when the magistrate judge entered the basic attorney's fees amount. I guess the question, Your Honor, is whether the fact that the magistrate judge invited or indicated he would accept such a motion, whether that destroyed the finality of the order or not. And our position is that because that's possible in every case, whether the judge says that or not, that it can't possibly be that it's not final because of the possibility that someone would file such a motion. So what flows from that? So let's say there's some ambiguity there because somebody could do something further that isn't invited. Then everybody assumes that they have 30 days and they timely file their appeal. Or if they're concerned about whether that's right, they ask the judge, you know, is this final and appealable? And the judge enters a minute order saying yea or nay. I mean, so I guess I'm trying to understand what other case other than this would be discommoded were we to hold that this was final and appealable after the, you know, that it was timely. Well, this is an unusual procedural context. I'm not sure there are a lot of cases that would be affected by it. You know, I think it would be true with any we haven't discovered another case where someone saw prejudgment interest for fees awarded in an attorney's fee award. Part of it limited the parties, I think, in finding relevant precedent generally. So I think it has narrow application. But to move on to the merits, perhaps, of the issue, you know, we think that the error that the magistrate judge made in awarding prejudgment interest was that he ignored the context of this dispute. And the context was that Brown claimed that he was entitled to about $5.5 million of the attorney's fees that were awarded by the court. And class counsel argued or claimed entitlement to the very same $5.5 million. And the district court then placed that money in the settlement account for the balance until that issue was decided. The settlement account to the parties settlement agreement and was an escrow account controlled by the district court that paid, for practical purposes, no interest. Interest rate, because the settlement funds in general were invested in this account. So it was all, it was required to be government securities. So as a practical matter, there was virtually no interest that was earned. So the parties, Brown and class counsel, each claimed entitlement to the same money. The litigation over that claim took a very long time. And at the end of it, the magistrate judge awarded Brown 52 percent of the disputed funds and awarded class counsel 48 percent of the disputed funds. And the important point from our perspective is that class counsel was denied use of that 48 percent during the five years or so of the litigation over it, the same extent that Brown was denied use of the 52 percent. And in fact, it was Brown's. But the magistrate judge held that Brown was entitled to fees effectively as of the beginning of that period, the way everybody else got their fees, and that plaintiff's counsel should have sought fees to cover Brown too and didn't. So then the question is, does he get the value of his services? And either he gets Laffey rates to account for the fact that there's time delay, or he gets prejudgment interest. So one implication of your position is why not give him a Laffey rate or some increment of the — from the $350 rate that's reflected in the contract, as was true for Mr. Holden, for other members of the team? Well, a couple of things in what you said. Time, value of money. That's the question. First of all, the reason — and I disagree with your characterization of what the magistrate judge found respectfully. The reason Brown's time wasn't included in the initial motion for attorney's fees was a member of the plaintiff's current — then-current litigation team went to California and met with Mr. Brown and said to him, in order to submit your time, we need detailed time records. And we know that he had those time records because he submitted them to the magistrate judge in part of this proceeding. But the court's order and the agreement with the government, the defendants required detailed time records to be submitted in support of an attorney's fee motion. At a time when everybody else was already submitting them, not just — At the same time. And Mr. Brown refused to do that. He sent a one-page summary of his time. He did not send his detailed time record. So it was literally impossible for plaintiff's counsel to submit his time record, to include his time in the fee application. We also said to him that Mrs. Cobell was still very angry with him for the way he left town without telling her or any of the other plaintiff's counsel, and that he should call her and discuss it with her. And he never did. So for those two reasons, his time wasn't included. The second point is, as the magistrate judge found, Laffey rates are inapplicable here. Laffey rates are in — applied to fee-shifting cases or fee-shifting statutes against the government, and that this — Right. But I mean, I refer to them loosely as sort of the amount that one would look at as an adjusted current market rate rather than a — than the rate as of the agreement many years before. But where — pardon me. Plaintiff's counsel, the $4.6 million that — or $2.6 million that were awarded to plaintiff's counsel out of the $5.5 million that was set aside, you know, we lost the same use of that money during the same period of time. And the key point here is that at the very beginning, when this money was put in the settlement account, there was no secret that it was going into the settlement fund. Judge Hogan ordered it. And there was no secret that it would earn essentially no interest, a fraction of a percent of interest. And if Mr. Brown had a concern about the money sitting there not earning any interest during this period of time, he could have said something at the time. And the parties — So too could you have. Well, we're not the ones complaining about the loss. Well, you are, because you're saying part of the problem in giving him the pre-judgment interest is that you are not getting pre-judgment interest. Well, part of our problem is that we're not being treated equitably, that we lost the same use of the money, and that he — it's unfair for him to get upwards of a million dollars of pre-judgment interest out of the $2.6 million that was awarded to class counsel. Is the $99 million that was awarded to class counsel, that wasn't based on a Lodestar calculation, was it? It wasn't a — I mean, I know there was a cross-check, but it's not that every — that whole amount. It's more of a compromise, isn't it? Well, then the magistrate judge's order or the — No, the $99 million that was the pot from which Mr. Brown's fees were extracted. Well, the settlement range was a compromise, right? $50 to $99 million. Judge Hogan asked the time records to be some detailed time records as a Lodestar cross-check, and then awarded $99 million. But that raises another point I can respectfully disagree with, Your Honor. No other lawyer in this case was paid by the hour, right? Right. Only Mr. Brown's the only one seeking entitlement to be paid by the hour. So the rates that were submitted to the court as part of that Lodestar are not the amounts that they were paid. He's the only one who's — But you're not getting less than the Lodestar amount you requested. Well, we're getting less than our total time records that were submitted to the court, which were about $110 million. By the settlement agreement, we agreed not to seek the full amount. So we got — we actually requested $99.9 million, and Judge Hogan awarded us $99 million, not that I'm complaining. But you didn't have to go through the billing judgment slice and the — I mean, there wasn't scrutiny. Absolutely. That's absolutely right. And your effective hourly rates were well higher than the rates reflected, for example, in — is it Mr. Hurd's letter? You know, he ended up getting an effective rate much higher than Mr. Brown got. Well, I'm not — I'm not sure that that's true. Certainly, I don't think the magistrate judge found that. The — But if you look at his hour — his timesheets and the amount he ends up walking away with, and you calculate an effective rate, it's higher than what Mr. Brown got. Right. But — And higher than what was in his — higher than what was in his retainer letter. Yeah. But that's true. But the rest of the plaintiff's counsel, unlike Mr. Brown, who stood with the case years after Mr. Brown left Washington and went back to California, they bore the risk of getting nothing, right? Absolutely. And they did the brunt of the work at the beginning. They did the brunt of the work at the end. And that's why —  But they also wanted him to leave. You're not crying that he left. A critical member of the team left us in the lurch. That's not his case. Well, I would concede that is the case. But I think the ethical obligations on lawyers still apply, whether you're a critical member of the team or whether you're a pain in the butt that everyone else has. He's a bit of a subcontractor to you. I think you would not dispute that. I'm sorry, Your Honor. He was a bit of a subcontractor to the plaintiff's team. No, no. I don't think that's right. He had his own engagement letter with the plaintiffs. Functionally. He's not leaving the plaintiffs high and dry by any means. I agree with that, Your Honor. But as the restatement makes clear, this is moving more on to the attorney's fees issue. But as the restatement makes common data, Section 37 makes clear that forfeiture of partial or total fees can be appropriate even without harm when the violation of ethical duties is flagrant enough. And we certainly think that leaving town without — I mean, you have to remember, Your Honor, Mr. Brown's shared office space with the rest of plaintiffs' counsel is literally next to the rest of plaintiffs' counsel. Does that question go to the interest — prejudgment interest issue? Or does that go back to the merits of the award issues that you say we don't have jurisdiction over? I think it goes more to the merits of the award issue. Right. Yes. So if we are limited to the interest question, then we really don't have to reexamine any of those decisions, do we? Yes, that's correct. All right. If you agree there's no jurisdiction over the attorney's fees and ethics issue. Now, I hate to open the can of worms any further than it is, but if we do examine the merits issues, what is our standard of review? Well, I think the standard of review is abuse of discretion. All right. Yes. So don't you have a very steep hill to climb if you —  I think both sides do with respect to the attorney's fees. With respect to what you say the errors are in the attorney's fees, you would have an abuse of discretion hill to climb. Okay. We have an abuse of discretion, except we do point there is a clear legal error that the magistrate judge made in the attorney's fees order. And I don't think the other side disputes this. I mean, basically, the magistrate judge, I think, agreed that Mr. Brown violated his ethical duties in two ways, by not notifying his clients. Well, he agrees with that. I'm sorry? He agrees with that. He agrees with that. Okay. So the question is, we've got that. Okay. And then the magistrate judge said, well, I'm going to excuse those violations. And he gave two reasons for excusing the violations, one of which is about the misquotation from the comment to the D.C. ethics rules, turning the meeting on its head. I don't think Brown defends that. So that is a legally erroneous Brown. But it doesn't really make a difference, does it? Either way. The misquotation, it just doesn't seem like it made an operative difference. Well, it makes a difference only in the respect that the magistrate judge said, there are two reasons I'm going to excuse the ethical violations. One of them is plainly wrong. If the other one is satisfactory, then, yes, it doesn't make any difference. We would suggest that the other one is wrong also. I mean, he basically said, well, Mr. Brown didn't intend to violate the ethics rules because he thought he was still on the job, albeit 2,300 miles away, and was still on call. And, you know, even within the abuse of discretion standard, we think of that holding as legally erroneous. And that's obviously something the Court can review de novo. You know, a pure heart and an empty head is not a defense to an ethics violation here. And it's just incredible to suggest that Mr. Brown thought that he was fulfilling his ethical obligations from 2,300 miles away when there's active day-to-day litigation centered in federal court here in D.C. with lawyers spending, you know, thousands of billable hours per year on the case. So we would suggest that both of those grounds are legally erroneous, and therefore, the magistrate judge should take another look at whether a forfeiture is appropriate and to what extent a forfeiture is appropriate. The point I make here is it's not like Mr. Brown, even if he's denied all of his fees in this proceeding, and we're not necessarily suggesting that that is the appropriate result, is going to go away penniless. He already received numerous fees. I said you can make that same argument about you, too. I'm sorry, Your Honor? I said you can make that same argument about you, too. Well, that's true. I mean, that doesn't get us anywhere. Well, but we — You're both getting something out of this, right? Come on. That doesn't help at all. Yes. Let me ask you just about the standard of review. The magistrate judge seemed to treat this as a contract question. And if it is a contract question, then isn't the standard of review somewhat different? It's, you know, de novo on issues of law and clearly erroneous on factual determinations. And I assume you agree with that, but you may disagree with whether this should be reviewed as a contract decision. Yeah. I don't think it's a contract question. He didn't — Brown didn't file a claim for breach of contract. There's, you know, the contract, the engagement letter is what it is. There's no dispute about what it says. I think what the magistrate's finding was, he said, listen, Brown bears the obligation to show what his reasonable fee was. The only evidence in the record is his engagement letter with a $350 per hour fee. And since he didn't submit anything else, that's the fee that governs. But what is the underlying basis of the fee award if it's not a contract? Well, his fee petition saw it part of the common fund that the plaintiffs created. His rationale shifted along the way. By the time he got to the hearing, it was sort of a combination of a quantum Merowick claim based on the engagement letter. You know, it wasn't a breach of contract claim because, you know, he would have had to sue presumably the — his engagement letters with the plaintiffs. He would have had to sue the plaintiff class somehow in trying to collect the judge's — I thought this is against the plaintiff class. I thought you were representing the plaintiff class. Well, we — the case — yes, we do, but his claim was for part of the common fund that the court had created. My point is that it wasn't a civil action, Brown versus Covell at all. It was a claim for part of the common fund, as I understand what their theory is. So I don't think it was — I think like any attorney's fees award, it's reviewed for legal errors or reviewed in nova, obviously, but otherwise reviewed for abuse of discretion. All right. Thank you. Thank you. We'll hear from Amicus for the other party. Oh. All right. Or do we want to hear from — on this issue from Brown Square? Well, I'm just going in the order that they're here, and he's a petitioner. He's an appellant, so I think we should hear from him. Oh, okay. Yeah. Go ahead. May it please the court. I'm Nicole Reeves here on behalf of — here arguing as court-appointed Amicus on behalf of Mr. Clayton Creek. In my very brief time with the court, I plan to address two issues. First, the fact that Mr. Creek's claim for relief has become moot because he has fully received all the Covell settlement funds he is entitled to and has been permitted to spend them. And second, that under the doctrine laid out in the United States v. Munsingwear, this court should vacate the district court's order below and remand this case to the district court with instructions to dismiss the case. Why and how, in your understanding, does Mr. Creek believe that he still has a claim, given that he joined in full your brief claiming that his claim is moot? Yes, Your Honor. As I understand it, for the first time in his filing in this court, potentially refer to Native American trust or lease payments, so unrelated to the Covell class settlement that he believes that he's entitled to and that he believes are being impermissibly used to pay prison fees or PLRA obligations. So he believes he has other entitlements not flowing from this litigation that he is being deprived of. That is correct, Your Honor. And in terms of the Munsingwear point, I understand the general legal argument, but what's at stake with Judge Hogan's order? How could it have any preclusive or prejudicial effect? Why should we vacate it? Yes, Your Honor. Did we dismiss the claim of prejudice, as far as I understand? Just said, hey, if there's a problem, come back? So a couple of responses to that, Your Honor. First, I agree that it's not completely clear the extent to which Judge Hogan's order would be preclusive, but under numerous cases from this court, such as American lease and other cases, this court has held that when there's a doubt as to whether there would be any preclusive effect from a decision, the doubt is resolved in favor of vacater. And my second response is it's not actually clear that the motion was without prejudice, although he follows up his denial with a statement that class counsel can raise other issues and encouraging the South Dakota Department of Corrections to behave in a certain way, the denial is unequivocal. There's no statement that it's without prejudice, unlike other orders in this case that Judge Hogan issued. Is there any need to vacate it? Has he asked that it be vacated? Mr. Creek? Yeah. Well, Your Honor, Mr. Creek has joined our brief in full, and to the extent that he's joined that brief in full, I think that's correct, and he's obviously But he hasn't reached out and said, if you can only do anything for me, get this order vacated? No, Your Honor. That was what I – what, as a court appointed amicus, we believe to be in his best interest, because it does – it fits with the whole reason that vacater – that courts do perform vacater. The Supreme Court said in Cameron v. Green that the reason that courts employ vacater is to clear the path for relitigation and not to punish a party because they were unable to challenge something on appeal. And while I agree that it's unclear how much this order might impact him in the future, that's really the best way to ensure that he can fully and fairly raise related claims or if he becomes entitled to additional COBEL settlement funds as an heir in this case or in a future case. So just returning then briefly to the fact that – to some of the other arguments that Mr. Creek has made in some of his more recent filings, he's mentioned, for example, the possibility of mandamus in some of his filings with this court. And this court should not grant mandamus for a couple of reasons. The first is that the mandamus request doesn't save the issue from mootness. And the second issue is that his claim does not meet the high standards required to show that he merits mandamus. He has not shown that he has no alternative form for relief, which is one of the first requirements for showing a mandamus. As far as I understand it, as previously mentioned, he wants to be able to spend other unidentified Native American trust or lease funds, and he will have adequate means to obtain that relief, particularly if this court vacates the order below. He can file a new suit in the District of South Dakota against the South Dakota Department of Corrections, likely 1983 suit, requesting that he be able to use those funds. If the court has no further questions. Ms. Reeves, you were appointed by the court to represent, to serve as advocacy. We're grateful to you for your help. Thank you. Thank you, Your Honor. So we'll now hear from counsel for Mr. Brown. Mr. Larson. Thank you, Your Honor. May it please the Court, Stephen Larson for the appellee and cross-appellant, Mr. Mark Tester Brown. Your Honors, I'll deal with the three issues raised on oral argument here by opposing counsel. The first issue is this jurisdictional issue. We believe that the prejudgment interest motion was clearly a 59E motion that was brought as such. Rule 4? Being brought as such, you mean simply that he stalled it as such when it was filed, right? We were following the court's invitation to file a 59E motion. It would make no sense whatsoever to appeal the fee order and then turn around and have this court rule on the fee order and then go back and file a motion for a prejudgment interest that the court not only invited, but indicated was part and parcel of the award of the attorney's fees. It was necessary to make Mr. Brown whole. Do you have any case where a motion for or a petition for prejudgment interest has been held to have stayed the tolling of the time for appeal? To have stayed the... You're claiming here that the filing of this motion seeking interest stayed the running of the time for the filing of the appeal, is that not correct? Yes, I'm just following the... Do you have a case that says that's been done before? Right. It stayed it for the period of time until it was resolved. Do you have a case where it has been held that a motion or a petition for prejudgment interest stays the running of the time... Not a specific case, Your Honor. ...stays the running of the time for filing an appeal of the underlying order? I don't have a specific case on that, Your Honor. You have a general case on it. Do you have a case on that, sir? I don't have a case, Your Honor. I have the statute, though. The statute clearly states if a party files in the district court any of the following motions under the federal rules of civil procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining entry motion. And it lists as number four a motion to alter or amend the judgment under Rule 59. Now, do you have a case that holds that a motion seeking prejudgment interest is such a motion to alter or amend? Yes. The United States Supreme Court, OSTRNEC, O-S-T-E-R-N-E-C-K, the United States Supreme Court has held that... What does it say? A motion, sir. What does it say? It holds that a motion for prejudgment interest is a motion under 59E. And it's not just OSTRNEC. There's Crow versus Bullduck. These are all cited in our briefs. And Heck versus Trish, if I'm pronouncing those correctly. The courts have consistently held, and the Supreme Court has held, that these are proper 59E motions. And the reasoning makes sense, Your Honors, because the prejudgment interest is intimately tied up in making the equities, restoring the balance, restoring the issue. So I think the jurisdictional issue, Your Honors, is quite straightforward. And it not only makes dictated under the law, but it makes practical sense. The cases that they rely upon, the Yoast case, the Tricky case, and the 11 vehicle cases, these are all cases in which the attorney fee motion was brought after judgment, or after the appealable order, and in no way affected the equities or the restoration of the rights or the ruling or the judgment in any ways. They were clearly supplemental orders. That's not the case with the prejudgment interest motion, particularly I would submit in the context of this case. Turning to the next issue that is raised by counsel, and that is the issue of whether or not Mr. Brown was even entitled to the attorney's fees. And this is this ethics violation. Before you move on from the jurisdictional question, I had seen this a little bit differently in the sense that the first question I would ask is, was the initial order granting the fee amount without prejudgment interest, was that a final order that would be appealable? And I just look at that. I understand your position is that it was, but I look at that and I say, it doesn't look final to me because he says, you know, we're going to wrap this up. I'm going to see whether you want prejudgment interest. And, you know, there is a question, okay, if you said, hey, we're not going to file that, or if the other side thinks you're not, or somebody's wondering if they should appeal now. But it seemed unfinished to me. And so why not just say that? Intent of the judge, you know, proceedings ongoing, no need for 59, because that, as you point out, the typical question about whether something's 59-80 or not in a fee petition is in a case where there's a concern that fee proceedings would hold up a separate run into that, and we just don't have that here. And I just wondered if you have any reason that that would not be a way to analyze this. You know, I think that is another way of analyzing this, Your Honor. I don't think that there's – if we had certainly said that we don't – if the time limit had gone by, the 30 days or the 28 days had gone by and we had not filed the most prejudgment interest, then I have every reason to believe this would have been an appealable order. I don't think counsel disagrees. We all treated the order as a final appealable order, but it had this hook in there where the court, somewhat unusually, actually invited the Mr. Brown to file this motion for prejudgment interest. And clearly, when you couple that with his reasoning in the order on the motion for prejudgment interest, it is clear that it is now all inextricably intertwined, that the prejudgment interest was necessary to make Mr. Brown whole and to give him what he was equitably entitled to under the contract and the engagement and the work that he did in the theory of quantum rule. It's all inextricably intertwined, and it was that – like for both practical purposes and under, I think, the clear reading or a clean reading of Rule 4 is what is now appealable. So I don't think that there's any – All right. I don't want to use up more of your time on that. You can go back to what you were addressing on the substance. With respect to the substance issues themselves, Your Honors, with respect to the ethics issues, and certainly I would never want to in any way mitigate any ethics violation, but there are ethics violations and then there are serious ethics violations. And if the district court correctly found in this case, this does not rise or come close to being a serious ethics violation, particularly in the context of this case. Mr. Brown was iced out of this case after many, many years – six years, in fact, of very hard work. The years in which this case was struggling, the years in which the hardest work of this case was to be done. It happens, unfortunately, many times when you have these large multi-district litigation cases where all of a sudden the case looks good and now some of the people that worked the longest and the hardest on it get iced out. He did not quit. He went back to California. He continued to receive assignments after he returned to California. As the district court found in his mind, he was still fully engaged in it. Now, he certainly has a right to withdraw, but he was always willing and able, as he testified at trial, to continue. And I think it was these circumstances that the court correctly found that his failure to notify the court of what the court found to be his withdrawal, even though that was not his intention to withdraw, was something that did not rise to the level of a serious ethics violation that in some way constituted a breach of fiduciary duty or forfeiture of any fees. The district court concluded that Mr. Brown's withdrawal was, quote, not so unjustified as to deprive him the right to compensation for the six years of loyal and exclusive service to plaintiffs that preceded it. As the Jacobson court noted, it is, quote, unquote, simply unjustifiable to consider minor technical and harmless violations of ethical rules to be indicative of a breach of fiduciary duty. There were an army of lawyers that continued to litigate this case after Mr. Brown returned to California. There was no harm to Das, there was no harm to anybody in this, and there would certainly not be any justification for full discouragement, let alone any discouragement in this case. And moreover, if there was to be any discouragement, it would only be for the period of time where there was an alleged breach of fiduciary duty. We're certainly arguing that there was no breach of fiduciary duty, and that would be for the period after his return to California in which there was a minimal amount of attorney's fees in any event. So this argument, like the first one we submit, goes nowhere. And the third argument that is made here is this notion of the escrow funds somehow mitigating against prejudgment interest. That's the one where I think you may have the biggest problem, or one where you may have a big problem. Ordinarily when you have an interest award, it's awarded against a party who's been withholding money to which the claimant was entitled. Here we have an escrow fund as to which neither party is holding it against the other. It's held by the court to settle with later. Why is he any more entitled to interest than they would be entitled to interest? Well, because you have to look at the circumstances, Your Honor, of how this was set up. This wasn't an escrow fund agreed to by the parties like the cases that they cite have. This was a situation where Judge Hogan, after receiving Mr. Brown's petition, took a look at it and took the exact amount of money that Mr. Brown was requesting based on his petition, and he ordered that that money be set aside, and then this matter was referred to the magistrate's office. Each of these parties, the class attorneys on the one side and Mr. Brown on the other side, each are claiming that that is money they're entitled to as counsel fees. And the court, in order to distribute the rest of the money, I guess, sets aside a segment here over the disputed part, and part of it is awarded in the end to Mr. Brown, part of it to the other attorneys. But I'm not sure that I see why he is any more deprived or has any more remedy in the form of pre-judgment interest than the other claimants do. Well, Your Honor, the district court rejected this argument, rejected the argument that Well, I understand that we're usually up here hearing arguments that were rejected in the district court. So the district court rejected it, but why shouldn't we reverse that? Well, I think the district court relied on the plain language of Section 15109. The critical question, and I'm quoting the district court's language here, You're reading me the plain language. is whether the appellants unlawfully withheld the funds in question, but what, if anything, remains owing to Brown to make him whole. The focus, the perspective here, as set up by Judge Hogan in setting up this escrow, considering this petition, the gravamen of this petition is what is due and owing to Mr. Brown. And the district court had a trial, heard all of these arguments, some of which are being repeated today. We went through a whole week of this process and determined that there needed to be a combination of an attorney-free award plus pre-judgment interest. That's why the court expressly went out of its way, and that was the calculation that the court, in its discretion, came up with to make Mr. Brown whole. That was the court's perspective, and that was, I think, the right perspective. Is there any case like this one where the funds were put in escrow and there was pre-judgment interest? Do you know of any case? Well, Your Honor, we have cases where, because they were in escrow, pre-judgment interest was denied. Right, Your Honor, we don't have a case. Do you know of such a case? We don't have such a case, Your Honor. We distinguish the cases cited by Yeah, I understand that. This was a unique case, and no one had a say in this. I mean, this is something which Judge Holder did. Isn't the Frederick County Fruit Growers case such a case? I may be misremembering, but do you have any? I mean, I should ask this of both sides, but do we have any idea why the court would put such a large amount of money in an account that doesn't bear any interest? I know there's concerns about safety, but even then, can't one do better than Why the court put it in an interest-bearing account?  That I cannot answer, Your Honor. I would have to ask Judge Holder. I mean, this was not just the fee amount. This was also the plaintiff's awards, right? Right. I don't think either side was in the position to question Judge Hogan at the point that he did that, and that was a decision that he made. You see, in May, the court said that prejudgment interest was inappropriate because the defendant didn't improperly withhold funds, wrongfully withhold funds. That wasn't what happened here, right? There wasn't any wrongful withholding. Well, we believe that what was wrongful in this case was that the attorney's fees, Mr. Brown's attorney's fees, that the court found, the district court found, were not included in the submission for attorney's fees. So the right to have that litigated back in 2011 was wrongfully withheld from Mr. Brown. Right. The case I was thinking of was just this Frederick County fruit growers case in which Judge Ritchie awarded an effective rate of 9% because the funds had been earning substantially less under the escrow accounts established pursuant to a different judge's order. Right. And that was the case where they held that the 9% requirement was not proper. But certainly the prejudgment interest was. But the notion of having some prejudgment interest was sustained. Was proper. Right. And we think that certainly you can infer from that, and I think apply that to this case, that prejudgment interest is appropriate here as well. I don't think there's any dispute that the court had discretion to award prejudgment interest on the facts of this particular case. The rules and the law in the district here are quite clear on that. And if this would have been an escrow account to which Mr. Brown had agreed or had created in some way, then I would understand the case has been cited by the appellants. But that's not the case here. On the hourly rate, it's Mr. Brown's burden to establish an hourly rate. Was there any record evidence that he had established an hourly rate higher than $350 an hour? Well, there was some record in the trial in terms of what his rate had been at various times after the initial engagement agreement was entered into. I'm sorry that I can't cite that. There were like 360 was one and maybe 380 at another point. There were other rates. He basically put himself all into this case. He moved from California. He came back here in Washington, D.C. He rented actually a room from the apartment. Right. No, I understand all those facts. When he left and went back and took up prior practice, there's no evidence in the record of any billing rates from that period of time. I think we would have to assume we'd start with 375 back in 2009. But certainly, not 1999, but certainly over the decade that followed, the rates went up dramatically. Attorney's rates have gone up. But we don't have anything in the record showing his rate post engagement. We don't, Your Honor. That's why we're suggesting a LAPI rate, the appropriate rate at this point. But this is abuse of discretion too, right? This is abuse of discretion also, right? Right? I'm sorry, Your Honor? We're reviewing this for abuse of discretion, right? Yes, yes. I believe this is abuse of discretion.  Not to affirm? Well, Your Honor, I think the— How do you make the abuse of discretion argument? That is a good question, Your Honor. I do agree that we just think it is clearly erroneous to suggest that somebody in 2007 has the same rate that they agreed to back in 1999. And frankly, given the other equitable circumstances in this case, given, as the Court has pointed out, the rates and the effective rates that would be received by the other counsel in here, it is just fundamentally unfair. Yeah. Okay. Anything else? Thank you, Your Honor. Thank you. Did Mr. Turner have any questions? Any time left? No. Okay. You can take a minute. Thank you, Your Honor. The magistrate judge expressly found, it's page 530 of the joint appendix, that Brown, quote, nor has he, Brown, introduced any evidences to his actual hourly rate at the various times the services here were rendered, except for the $350 rate found in his engagement letter. So, Judge Pillar, I think the answer to your question at the very end there, to my friend on the other side, is no. There's no such evidence. He could have introduced that evidence. He could have introduced evidence about how attorneys' rates normally go up from year to year, what the market was in D.C. or in California, and he didn't do so. The Frederick County case is an interesting case. Parties have cited both the district court opinion by Judge Ritchie and then this Court's opinion by Judge Ginsburg. They seem to be a little bit inconsistent, even though it's a direct appeal, but the key point is what this Court said in Frederick County. The Court said, quote, when funds are deposited with the court, the court undertakes to ensure an adequate rate of return. The reason this Court affirmed prejudgment interest in that case was because the losing party himself or itself put the money in an escrow account earning a very low interest rate, and this Court was like, listen, if you do it on your own, you have no incentive, and you think you're going to lose. You have no incentive to get a high interest rate, and therefore, that doesn't protect you. But the Court, I think, was saying that when the court, this Court was saying when the district court controls the interest rate, its obligation is to protect the parties, and it's basically that's as far as it goes. You know, I also disagree with counsel. If the parties … Since you're over your minute, I feel free to interrupt you to ask a question. Why doesn't Ostronek control on the question whether this is a third-fourth motion or not? Yes, Ostronek does not control for a simple reason, which is in Ostronek, the party filed a motion for prejudgment interest based on a judgment, and that is not the case here. The judgment here was entered in years before, so Ostronek dealt with the judgment itself, and we know what a judgment looks like. Rule 58 requires, you know, a judgment to be in a separate pleading. It says judgment on the top. So Ostronek was limited to that situation. We cited three cases, three circuit cases, 11 vehicles, Tricky, and Yost, that all dealt with the situation, the question. Now, they didn't deal with prejudgment interest. I'll agree with that. But they dealt with motions seeking to modify or amend an attorney's fee award. And to disagree with what counsel said, Yost, the attorney, the denial of attorney's fees in Yost, and that was the Tenth Circuit case, the denial of attorney's fees was in the judgment itself. The judgment denied attorney's fees. The party, the plaintiffs then filed a motion, what they called a 59e motion, to say, hey, we're entitled to attorney's fees. And this Court said, excuse me, the Tenth Circuit said that was not a 59e motion. It may have been a proper motion, an attorney's fees motion, but it wasn't 59e. That told the time to appeal. And, in fact, the Third Circuit in the But that's because it's all bound up with the merits, right? I'm still trying to understand, like, what would animate your position as a matter of orderly administration of the law that somehow this is final, but it's not judgment, and therefore there's no opportunity for 59e? Well, it just doesn't make sense that we would have this category of one where there can be no follow-on on the kinds of grounds that there typically would be of something that is considered to be final. Well, Your Honor, two responses. I realize I'm gone. First, we're not suggesting there's no opportunity for a follow-on. I mean, they could have we're not suggesting the Court lacked jurisdiction over their prejudgment interest motion. We're just saying it wasn't a Rule 59e motion. So whether you consider And, therefore, it doesn't tell the time. And, therefore, you're both out of luck. If it were not, and the agreed party filed appeal in the meantime while that motion, whatever it's called, was still pending, would the district court have jurisdiction to hear that motion? I think it would. And, you know, typically there would be, in a sense, have to be two appeals if someone wanted to appeal. Not in a sense. Okay. There would be. But that happens all the time in the context of attorney's fees. As we know, an attorney's fees motion, dependency of it does not destroy finality. General Rule, when you take a case up on appeal, the district court has lost its jurisdiction over those cases. Well, over the issues that are bound up with the judgment. But I don't think that's the case here, the prejudgment. There's no authority that we found that the prejudgment interest would satisfy that. And, Judge Pillard, you know, this is a jurisdictional issue. I think if you look at 11 vehicles, Tricky, and Yost, I'm not sure I can give you an answer in the abstract about why that rule makes sense, but that's what those cases hold. And 11 vehicles, you know, is very explicit, expressly rejecting the argument, the same type of argument there asserted by the government that Brown says here. The 11 vehicles, the court said, the government asserts that Rule 59e applies in this case because the judgment the ID sought to alter or amend with their supplemental fee award was the award of attorney's fees. And the court expressly rejected that. They said the underlying judgment in this case was the district court's dismissal of the forfeiture proceedings because Rule 59e only applies to motions to alter or amend the judgment. It is inapplicable here. It may well be in some sense, and I think this is what you're getting at, Judge Pillard, that it's sort of maybe a trap for the unwary, but jurisdictional issues and timing requirements, they're jurisdictional for a reason. The court doesn't have authority, I think, to excuse them if they don't make sense in a grander scheme. All right. Thank you. Thank you, Your Honor. Case is submitted. Stand, please. This audible court now stands adjourned until tomorrow morning at 9.30 a.m.
judges: Tatel, Pillard, Sentelle